UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEXTER MORGANSTERN,<br>Plaintiff,<br><br>v.<br><br>IQ DATA INTERNATIONAL INC,<br>Defendant. | CASE NO. 2:25-cv-00076-TL<br><br>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |

This matter is before the Court on the Parties' cross-motions for summary judgment. Dkt. Nos. 17 (Plaintiff's Motion for Partial Summary Judgment), 20 (Defendant's Motion for Summary Judgment). Having reviewed the Parties' motions, response briefs (Dkt. Nos. 18 (Defendant Response), 22 (Plaintiff Response)), reply briefs (Dkt. Nos. 19 (Plaintiff Reply), 23 (Defendant Reply)), and the relevant record, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion and DENIES Defendant's motion.

//

//

# I. BACKGROUND[1]

## A. Procedural Background

On December 18, 2024, Plaintiff Dexter Morganstern filed a complaint in King County Superior Court ("KCSC") against Defendant IQ Data International, Inc. Dkt. No. 1-1 (state court complaint). Plaintiff brought claims for violation of the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. § 1692e (Count 1); violation of the FDCPA under 15 U.S.C. § 1692f (Count 2); violation of the Washington Collection Agency Act ("WCAA") under RCW 19.16.250(21) (Count 3); violation of the Consumer Protection Act ("CPA") (Count 4); and outrage (Count 5). On January 13, 2025, the matter was removed from King County Superior Court to this District. Dkt. No. 1 (Notice of Removal).

On April 9, 2026, Plaintiff filed a motion for partial summary judgment as to liability only for Counts 1 through 4. Dkt. No. 17. On May 8, 2026, Defendant filed a cross-motion for summary judgment seeking to dismiss all of Plaintiff's claims. Dkt. No. 20. The matters are fully briefed and ripe for the Court's consideration.

## B. Factual Background

In July 2019, Plaintiff Dexter Morganstern signed a lease to rent an apartment with several roommates for one year at Martha Lake Apartments ("Martha Lake") in Lynnwood, Washington. Dkt. No. 17 at 3; Dkt. No. 18-1 (Morganstern Dep.) at 3. On June 28, 2020, Plaintiff notified Lindsay DeBoard, the property manager of Martha Lake, that he intended to move at the end of his lease—July 20, 2020. Dkt. No. 17-1 (Morganstern Decl.) at 1–2 ¶ 3. Plaintiff was notified via the Martha Lake online payment portal of the final amount he owed. *Id.* at 2 ¶ 4. On July 7, 2020, Plaintiff wrote a check for the final amount and provided it to the

[1] The factual background is undisputed, unless stated otherwise.

Martha Lake manager. *Id*. Before moving out of his apartment, Plaintiff established a forwarding address through USPS, so that anything carried by USPS that was mailed to him at Martha Lake would automatically get rerouted to his new address. *Id*. at 2 ¶ 5. A few days before Plaintiff moved out of his unit, Ms. DeBoard conducted an inspection of Plaintiff's apartment unit with Plaintiff and told Plaintiff that "everything 'looked great.'" *Id*. Plaintiff returned his unit keys to Ms. DeBoard on the last day of his lease and moved out. *Id*.

Defendant IQ Data is a debt collection agency. In the Spring of 2022, Plaintiff noticed that Defendant had placed an adverse entry on Plaintiff's credit report claiming he owed over $800 to Martha Lake. *Id*. at 3 ¶ 10. Plaintiff was confused because he had never received any notification from Martha Lake that he had an outstanding debt to them.[2] *Id*. at 3–4 ¶ 11. In response to this discovery, Plaintiff disputed the debt through credit bureaus, but these efforts were to no avail, as he received a letter from Defendant asserting the debt was "confirmed," but with no information as to how it was confirmed or what the debt entailed. *Id*. at 4 ¶ 12.

During the course of discovery in this lawsuit, Plaintiff learned that in response to his 2022 dispute through one of the credit bureaus (*see id*. at 3–4 ¶¶ 10–13), Defendant's internal system reflected that Plaintiff's account was coded as "CNP," which, according to Defendant's Rule 30(b)(6) witness, Holly Hofmeister, means Martha Lake "did not provide proof" of the debt (*see* Dkt. No. 20-1 (Hofmeister Dep.) at 15). This CNP notation had been made by a "person . . . working a previous notated dispute that we had received from TransUnion" who "reviewed [the account] and then they said that the account was CNP, which means the client did not provide proof." *Id.*

[2] Defendant claims that Martha Lake sent notice of a move out statement to one of Plaintiff's Martha Lake roommates detailing that Plaintiff and his former roommates owed money to Martha Lake for carpet replacement. Dkt. No. 18 at 3. Defendant does not, however, assert that Martha Lake ever contacted Plaintiff directly. *See id*.

In June 2022, Plaintiff received a call directly from a representative of Defendant telling him that he owed hundreds of dollars to Martha Lake ("June 2022 Call"). Dkt. No. 17-1 at 4 ¶ 14. When Plaintiff attempted to request further information about and evidence of the debt, the representative asserted, "we're not going to be sending out any additional things, you know, you're the only person that this impacts. We would like to prevent further collection action, but the only way we can do that is by getting this paid." *Id.* at 4–5 ¶¶ 14, 15, 17. Defendant's representative also told Plaintiff that Defendant had mailed Plaintiff a letter notifying Plaintiff of the debt. *Id.* at 5 ¶ 18. But when the representative gave Plaintiff the address to which Defendant had mailed the letter, it turned out to be the address where Plaintiff lived *before* he ever moved into Martha Lake.[3] *Id.* Believing the conversation was going nowhere, Plaintiff ended the phone call. *Id.*

Debt collectors typically send a validation of debt to consumers after a consumer timely contests the debt purportedly owed. *See* 15 U.S.C. § 1692g(b). Such a process is used by the debt collector to verify the debt to the consumer. *See* 15 U.S.C. § 1692g(a)(3), (b). The debt collector is only required to send the verification if the consumer makes a written request for validation of the debt pursuant to 15 U.S.C. § 1692g(a)(3).[4] Plaintiff could not make such a request since Defendant sent the original notice of collection to an address at which Plaintiff was guaranteed *not* to receive it. However, following the June 2022 Call in which Plaintiff informed Defendant's representative that he had never received the original notice and was clearly contesting the debt, Plaintiff received a letter at his updated address with what Defendant claimed was a "validation

[3] Plaintiff makes clear he had no direct contact with Defendant prior to this phone call and neither Party explains why or how Defendant had an address for Plaintiff that was several years old.

[4] While neither party directly references this statute, it is plainly what Defendant invokes when it argues that "Plaintiff's verbal request for verification in June 2022, more than thirty days after the initial notice was sent did not trigger any obligations on the part of IQ." Dkt. No. 18 at 4. Plaintiff does not bring a claim under this statute, but it is nonetheless relevant for context.

of debt" attached. Dkt. No. 17-1 at 6 ¶ 19; *id*. at 11 (June 2022 Validation Letter). The letter stated that Plaintiff owed $822.37 to Martha Lake, and the "validation of debt" section only included an assertion that the "transaction due" was $671.03—the principal of the debt—with the transaction description column stating, "Charge – T/ORecovery." *Id*. at 13; *see also* Dkt. No. 17 at 5. Nowhere in the "validation of debt" section did Defendant provide any proof that Martha Lake confirmed in writing to Defendant that the amount being demanded was actually owed to Martha Lake or that any debt to Martha Lake was owed by Plaintiff. *See* Dkt. No. 17-1 at 12–13.

In the two years that followed, Defendant continued to attempt to collect the debt Plaintiff allegedly owed. *Id*. at 6. On September 12, 2024, Defendant sent Plaintiff a letter demanding payment of the debt, asserting that the debt had risen to $979.83 due to the accrual of $308.80 in interest. *Id*. at 15 (Sept. 2024 Validation Letter). Again, the letter did not explain that Defendant received written verification from Martha Lake of the debt owed, and instead the letter requested payment and sent what Defendant claimed was "validation" that the debt was owed. *Id*.

Plaintiff continued his unsuccessful attempts to dispute the alleged debt through credit bureaus (*id.* at 4 ¶ 12), and he filed a complaint with the Washington State Attorney General's Office ("AGO") (*id.* at 6 ¶ 22). Plaintiff also reached out to Martha Lake directly. *Id.* at 7 ¶¶ 26–27. On October 17, 2024, and October 18, 2024, Plaintiff exchanged emails with a representative of Martha Lake. *Id*. at 24–26 (emails). Plaintiff requested a statement of all charges applied to his account after he moved out, as well as proof that any statements and associated documentation were sent to Plaintiff within 30 days of the charges. *Id*. at 24. The Martha Lake representative told Plaintiff, "Essex Property trust purchased Martha Lake in 2021. We [d]o not have any records from before that[.]" *Id*. at 25. The Martha Lake representative asked Plaintiff if he had contacted the old management company, but when Plaintiff inquired as to who the old

management company was, the Martha Lake representative never provided the information. *Id*. at 26.

On October 21, 2024, the Department of Licensing ("DOL") Board of Collections Agencies wrote to Defendant regarding Plaintiff's complaint.[5] *Id*. at 17–18 (letter from Defendant to DOL). Defendant responded to Plaintiff's complaint to the DOL and sent a copy of the letter to Plaintiff. *Id*. Defendant's letter, dated November 4, 2024, asserted, in relevant part,

> Upon receipt of this complaint, *we reached out to our client who was unable to provide the documentation requested*. Taking this into consideration, we are cancelling this account from our office. This by no means absolves the consumer of the debt, but it does remove our office from any further collection activity. We are requesting our tradeline be deleted from the consumer's credit. Please allow up to 45 days for this change to be reflected.

*Id*. at 17 (emphasis added). In essence, Defendant informed the DOL Board of Collections Agencies that it had requested Martha Lake provide proof of the debt owed, and Martha Lake was unable to do so. Therefore, Defendant cancelled the account and stopped attempting to collect from Plaintiff on behalf of Martha Lake. *See* Dkt. No. 20-1 at 14.

Shortly after Defendant cancelled the account, Plaintiff hired counsel and filed a complaint in King County Superior Court, later re-filed in this Court upon removal. Dkt. Nos. 1, 1-1. As the case progressed to discovery, in June 2025, Defendant provided to Plaintiff a document Defendant labeled as a "ledger," which Defendant asserted was proof that Plaintiff owed money to Martha Lake. Dkt. No. 17-1 at 28–30 (Ledger). The ledger reflects a charge for $671.03 from July 20, 2020, with the "description" column stating, "Damage Charges Carpet Replacement: Write Off by Charge Ctrl# 5542592." *Id*. at 30. The ledger document is dated as January 3, 2025. *Id*. at 28. Nowhere does the ledger include Plaintiff's name, instead only

[5] The Parties are silent as to how Plaintiff's complaint to the AGO ultimately went to DOL Board of Collections Agencies.

including the name of Plaintiff's former roommate at the top of the document. *Id*. at 28–30. Prior to discovery, Plaintiff never received the ledger nor any explanation from Martha Lake or Defendant as to the alleged origin or basis of the debt.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure "mandate[] the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The inquiry at the summary judgment stage is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 243 (1986).

The party moving for summary judgment must carry its burden of production by "either produc[ing] evidence negating an essential element of the nonmoving party's claim or defense or show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). This showing must be made through evidence in the record. Fed. R. Civ. P. 56(c)(1) (explaining the ways in which a "party asserting that a fact cannot be or is genuinely disputed must support the assertion"). Unless the burden of production is met, "the nonmoving party has no obligation to produce anything" to support its claims or defenses. *Nissan Fire*, 210 F.3d at 1102–03.

Courts do not make credibility determinations or weigh the evidence at this stage. *See Munden v. Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). They resolve factual issues in favor of a non-moving party, but "only in the sense that, where the facts specifically

averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Conclusory, non-specific affidavits are insufficient, and "missing facts" are not to be presumed. *Id.* at 889. Further, uncorroborated and self-serving testimony does not create a genuine issue of fact. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

## III. Discussion

### A. Plaintiff's Motion to Strike

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e)). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Plaintiff moves to strike the declaration of Defendant witness Michael Gulbranson because (1) the declaration does not clearly explain Mr. Gulbranson's relationship with Defendant and (2) the exhibits attached to Mr. Gulbranson's declaration are hearsay documents that cannot be introduced through his testimony. Dkt. No. 22 at 5–6. In reply, Defendant argues that the exhibits "show the state of the mind of the original creditor . . . that they in fact were telling Defendant that the debt was legitimate; as well as effect on the listener so there are two separate hearsay exceptions outside of the business record exception applicable to the documents." Dkt. No. 23 at 6.

#### 1. Personal Knowledge

The first problem with Mr. Gulbranson's declaration is that he has no personal knowledge of the information contained within any of the exhibits attached to his declaration. Evidence Rule 602 states, "A witness may testify to a matter only if evidence is introduced

sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony[.]" Fed. R. Evid. 602.

Mr. Gulbranson's declaration asserts that he is "VP of ARS, Leader for Defendant I.Q. Data International, Inc." Dkt. No. 21 (Gulbranson Decl.) ¶ 1. Regardless of his position with or relationship to Defendant, nothing in Mr. Gulbranson's declaration indicates that he has first-hand information about any of the exhibits attached to his declaration, yet he asserts that "Exhibits A–C to this declaration indicate . . . there [was] . . . a carpet replacement for $826.90 . . . There was a security deposit of $500 applied to these charges leaving a remaining balance of $671.03 owed from the tenancy." *Id.* ¶ 7. Although he asserts that Defendant received the documents from Martha Lake and that the records were maintained in the normal course of Defendant's business, he makes no statements as to where his knowledge of the contents of the documents comes from, other than simply reciting the documents. This is especially notable because neither the ledger nor the move out statement include Plaintiff's name. *See* Dkt. Nos. 21-2, 21-3 (Move Out Statement).

**2. Hearsay**

The second problem with Mr. Gulbranson's declaration is that the exhibits attached to it all contain hearsay because they are out-of-court written statements used to prove the truth of the matter asserted (*see* Fed. R. Evid. 801(c)). Defendant attempts to assert two exceptions to the hearsay rule but they both fail.

**a. Business Records Exception**

Mr. Gulbranson asserts, "I am a records custodian for IQ and have personally reviewed the records attached as Exhibits A–C of this declaration." Dkt. No. 21 ¶ 2. He further asserts that "[t]hese records are business records of I.Q. Data and are maintained in the ordinary course of business." *Id.* ¶ 3.

A record of a regularly conducted activity is not hearsay. Fed. R. Evid. 803(6). A record qualifies for this exception if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

*Id.*

As to the ledger, Mr. Gulbranson asserts, "[t]he Resident Ledger attached as Exhibit B to this declaration is a true and exact copy of the Resident Ledger during the relevant period Plaintiff was a resident and *provided to IQ* by the property manager for Martha Lake Apartments." *Id.* ¶ 5 (emphasis added). Mr. Gulbranson's statement that the ledger (and presumably the other exhibits) was provided to Defendant only confirms that the ledger is, at best, possibly a business record of Martha Lake and not Defendant. Instead, it is (possibly) a business record of another business that Defendant happens to retain. In other words, at best, it is a business record once removed. Mr. Gulbranson did not make any of the exhibits attached to his declaration and only says that the documents were "provided to IQ by the property manager for Martha Lake Apartments" without stating when the documents were provided to it. *Id.* ¶¶ 4–6. Therefore, not surprisingly, Mr. Gulbranson does not (and could not) testify as to whether these are routine records kept in the ordinary course of Martha Lake's regularly conducted activities or

whether they were made at or near the time by someone with knowledge (or whether, perhaps, the ledger or move out statement were instead created or re-created after the fact for purposes of this litigation). Because Mr. Gulbranson is not a "qualified witness," who can establish these necessary facts, any attempt to assert the exception as to any of the exhibits fails.

**b. State-of-Mind Exception**

In its reply, Defendant asserts that "the documents show the state of the mind of the original creditor." Dkt. No. 23 at 6 (citing Fed. R. Evid. 803(3)). Federal Rule of Evidence 803(3) states that the following is not excluded by the rule against hearsay: "A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will."

The state-of-mind hearsay exception does not apply to the any of the exhibits because, despite asserting that it would be the "creditor's" state of mind at issue, Defendant does not provide *whose* state of mind would be at issue. Indeed, the record is wholly unclear as to who even wrote those documents (and, therefore, who would be the declarant). Therefore, Defendant's argument for the state of mind exception fails.[6]

**c. Non-hearsay**

Finally, Defendant asserts effect on the listener as purportedly a ground for the admission of Mr. Gulbranson's declaration and the exhibits attached to it. Dkt. No. 23 at 6. Not only does Defendant fail to provide any explanation for its assertion, but Defendant also fails to even state

[6] It is also unclear how the original creditor's state of mind is relevant to the claims at issue in this case. That the creditor believed there might be a debt does not prove there was a debt or, if there was a debt, that it was Plaintiff's debt.

who the listener is. Its argument is incomplete, and the Court will not fill in the blanks for Defendant. Therefore, Defendant's argument to admit the evidence for its effect on the listener fails.

* * *

While Defendant tries to assert that the documents are already a part of the record (Dkt. No. 23 at 6), being a part of the record and being ultimately admissible are not the same. For the reason stated in this section, Court GRANTS Plaintiff's motion to strike the declaration and exhibits from Mr. Gulbranson. The lease agreement, ledger, and move out document all contain hearsay with no exception, and thus, all are inadmissible. Accordingly, the Court will not consider such evidence in its Order. *See Orr*, 285 F.3d at 773.

**B. Fair Debt Collections Practices Act (Counts 1 and 2)**

"Congress enacted the FDCPA to protect consumers from improper conduct and illegitimate collection practices without imposing unnecessary restrictions on ethical debt collectors." *Clark v. Capital Credit & Collections Srvs.*, 460 F.3d 1162, 1169–70 (9th Cir. 2006) (citation modified). The FDCPA is a strict liability statute, meaning that a plaintiff only needs to show that a debt collector violated the statute, not that the violation was knowing or intentional. *McCollough v. Johnson, Roden & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011); *Clark*, 460 F.3d at 1175–76. Additionally, the FDCPA is a remedial statute that is construed liberally in favor of the consumer. *Tourgeman v. Collins Fin. Servs, Inc.*, 755 F.3d 1109, 1118 (9th Cir. 2014); *Clark*, 460 F.3d at 1176 ("[W]e wish to reinforce that the broad remedial purpose of the FDCPA is concerned primarily with the likely effect of various collection practices on the minds of unsophisticated debtors."). To determine whether a violation occurred, the debt collector's actions are evaluated under the "least sophisticated debtor" standard. *McCollough*, 637 F.3d at 952. The standard is objective and asks whether "the least sophisticated debtor would likely be

misled" by the debt collector's conduct. *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988).

**1. Whether Defendant Is a Debt Collector**

The Parties do not dispute that Defendant is a debt collector subject to the FDCPA's provisions. *See* Dkt. No. 1-1 ¶ 2; Dkt. No. 6 (Defendant's Answer) ¶ 2.

**2. Whether Defendant Violated the FDCPA**

As an initial matter, the Court notes that the facts of this case are unlike those in any of the cases cited by either party.

**a. 15 U.S.C. § 1692e**

Under 15 U.S.C. § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Specific to Plaintiff's claims, Section 1692e(2)(A) provides that it is a violation for a debt collector to falsely represent the "character, amount, or legal status of any debt." Additionally, a debt collector violates Section 1692e(10) by "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Defendant asserts that "[a]ll of Plaintiff's allegations arise from his contention that no debt actually exists." Dkt. No. 20 at 1. But this is simply wrong. Plaintiff clearly states in its motion: "the violations in this case fall into two overarching categories: (1) Attempting to collect amounts not owed (as Plaintiff did not owe money), and (2) Making false and/or misleading representations in connection with those efforts." Dkt. No. 17 at 12. The Court will address each of these categories in turn.

**(1) Whether Defendant Made False Representations**

Neither party has met its burden of demonstrating an absence of a genuine issue of material fact as to whether the debt was actually owed and, therefore, Defendant's

representations about it were false. Plaintiff provides strong evidence that he did not owe the debt: *i.e.* (1) Plaintiff wrote a check to Martha Lake for the remaining balance on his payment portal account and gave it to the apartment manager (Dkt. No. 17-1 at 2 ¶ 4); and (2) Plaintiff did a walkthrough of his unit with his apartment manager a few days before vacating, and she told him the apartment "looked great" (*id*. at 2 ¶ 5). Still, Plaintiff's evidence stops short of actually proving that the debt was *false*. The Court is obligated on a motion for summary judgment to resolve factual issues in favor of a non-moving party and not to presume missing facts. *Lujan*, 497 U.S. at 888, 889. Here, the Court would have to presume that no damage was done or discovered in the few days after the walkthrough and before Plaintiff moved. As a result, the Court must find a genuine dispute of material fact exists and deny Plaintiff's motion.

And on the flip side, given Defendant has presented no admissible evidence in support of its motion for summary judgment, the evidence provided by Plaintiff is sufficient to create a genuine dispute of material fact as to whether the debt was owed. Therefore, the Court denies Defendants' motion for summary judgment.

**(2) Whether Defendant's Representations Were Misleading**

Defendant solely focused its pleadings on whether Plaintiff owed a debt and provided no evidence or discussion countering the claim that its actions were misleading. *See generally* Dkt. Nos. 18, 20, 23. Indeed, the word "misleading" does not appear at all in any of Defendant's briefs. *See id.* In contrast, Plaintiff provides ample undisputed evidence establishing that Defendant's collection practice was misleading, which is a violation of Section 1692e.

Here, the evidence shows that in the Spring of 2022, Plaintiff disputed the debt through credit bureaus (Dkt. No. 17-1 ¶¶ 10–12) and in June 2022, Defendant called Plaintiff about the debt (*id*. at 4 ¶ 13). Following the phone call, Defendant sent Plaintiff two letters, both of which included: (1) a request that Plaintiff pay the debt and (2) a representation to Plaintiff that

Defendant "enclosed validation of debt you requested with Martha Lake." *See id*. at 11, 15. With its correspondence, Defendant chose to provide what it characterized as "validation," or proof of the debt that had been secured by Defendant and was being provided to Plaintiff. But prior to sending both letters, Defendant had reached out to Martha Lake requesting proof of the debt, to which Martha Lake said it did not have any. *See* Dkt. No. 20-1 at 10–11, 15. This was even reflected in Defendant's internal system as a response to the 2022 dispute. *See* Dkt. No. 20-1 at 15. This was still the case two years later when Defendant sent Plaintiff the second "validation of debt," in response to Plaintiff's "request with Martha Lake," despite Defendant's records still reflecting that Martha Lake could not provide proof of debt. *See* Dkt. No. 17-1 at 17 (Defendant letter to DOL). Thus, Defendant represented to Plaintiff that Martha Lake gave it proof, even though Martha Lake did no such thing. Defendant does not—and indeed, cannot given the testimony of its corporate representative—dispute this in any way.

Plaintiff need not show that he was "actually . . . misled or deceived by the debt collector's representation; instead, liability depends on whether the *hypothetical* 'least sophisticated debtor' likely would be misled." *Tourgeman*, 755 F.3d at 1117–18 (emphasis in original). And here, the type of representation Defendant made would clearly mislead the least sophisticated debtor to believe that Martha Lake had provided proof of the debt to Defendant in response to the debtor's request, when in fact it had not. Defendant's argument that it was not required to give proof of debt, or that Plaintiff cannot prove the debt did not exist are irrelevant because, regardless, Defendant took further actions that were misleading: *i.e.* claiming they had validation of the debt when they knew they did not. As such, Plaintiff has met his burden of producing evidence negating an essential element of Defendant's defense. And Defendant fails to present any evidence to show there is a dispute of material fact regarding Plaintiff's claims that its actions during its collection efforts were misleading. To the extent Defendant's motion

for summary judgment asserts its actions were not misleading because the debt was owed, the Court has already rejected this argument. *See supra* Section III.B.2.a.(1). Therefore, the Court grants Plaintiff's motion for summary judgment on this issue, denies Defendant's motion, and finds that that Defendant violated 15 U.S.C. § 1692e.

**b. 15 U.S.C. § 1692f**

Under 15 U.S.C. § 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." "The collection [or attempted collection] of any amount (including any interest, fee, charge, or expense incidental to the principal obligation)" is a violation of Section 1692f, "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

Both the Parties rely on the same factual arguments stated above to support their positions as to 15 U.S.C. § 1692f. *See* Dkt. No. 17 at 15; Dkt. No. 18 at 6–7. The least sophisticated debtor standard is also applied to Section 1692f claims. *See Wade v. Regional Credit Ass'n.*, 87 F.3d 1098, 1100 (9th Cir. 1996). For the same reasons stated in Section III.B.2.a, the Court also finds that Defendant's actions were unfair. Defendant represented to Plaintiff at least two times—two years apart—that Martha Lake gave it proof, even though Martha Lake did no such thing and Defendant knew it did not have the proof, which is a plainly unfair practice. Such a misrepresentation is an unfair means to attempt to collect debt, especially in light of the least sophisticated debtor standard, where a debtor in that position could have believed Martha Lake gave Defendant proof of the debt.

As such, Plaintiff has met his burden of producing evidence negating an essential element of Defendant's defense, and he shows he has enough evidence to carry his burden at trial. In response, Defendant fails to present any admissible evidence to show there is a dispute of material fact. To the extent Defendant's motion for summary judgment asserts its actions were

not unfair or unconscionable because the debt was owed, the Court has already rejected this argument. *See supra* Section III.B.2.a.(1). Therefore, the Court grants Plaintiff's motion for summary judgment on this issue, denies Defendant's motion, and finds that that Defendant violated 15 U.S.C. § 1692f.

* * *

Accordingly, the Court GRANTS Plaintiff's motion as to liability for Count 1 and Count 2 and DENIES Defendant's cross motion as to Counts 1 and Count 2.

**C. Washington Collection Agency Act (Count 3)**

Plaintiff moves for a finding of liability against Defendant under the Washington Collection Agency Act. Dkt. No. 17 at 15. The WCAA is Washington's counterpart to the FDCPA. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 53, 204 P.3d 885 (2009). "Like the FDCPA, it prohibits collection agencies from making false representations as to the legal status of a debt, threatening the debtor with impairment of credit rating, attempting to collect amounts not actually owed, or implying legal liability for costs not actually recoverable, such as attorney fees or investigation fees, among other practices." *Id.* at 53–54 (citing RCW 19.16.250). While the WCAA is a counterpart to the FCPA, the WCAA does not contain the "misleading representation" language that the FCPA does. Plaintiff makes a claim under RCW 19.16.250(21), which states that "[n]o licensee . . . shall [c]ollect or attempt to collect in addition to the principal amount of a claim any sum other than allowable interest, collection costs or handling fees expressly authorized by statute, and, in the case of suit, attorney's fees and taxable court costs." RCW 19.16.250(21).

The Parties incorporate the same factual arguments for the FDCPA claims as the WCAA claims. *See* Dkt. No. 17 at 15; Dkt. No. 20 at 5. Plaintiff's arguments as to the WCAA focus on the assertion that Defendant's attempted collection was not authorized by law because Plaintiff

did not actually owe anything to Martha Lake. *See* Dkt. No. 17 at 16. As to Defendant's motion regarding this claim, it asserts that Plaintiff cannot establish that the debt is invalid, so Plaintiff's claim fails. *See* Dkt. No. 20 at 3. For the same reasons discussed above in Section III.B.2.a.(1), the Court finds that whether the debt was valid is a dispute of material fact and must go to the factfinder. Therefore, the Court DENIES both Plaintiff and Defendant's motion as to the WCAA claim.

**D. Washington Consumer Protection Act (Count 4)**

Plaintiff moves for a finding of liability against Defendant under the Washington Consumer Protection Act ("CPA"). Dkt. No. 17 at 15. "To prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag*, 166 Wn.2d at 37. Plaintiff's arguments for Defendant violating the first three factors of the CPA are that violating the WCAA is a per se violation of the CPA. Dkt. No. 17 at 15. But the Court has found here that Plaintiff has not established its burden for the WCAA claim. As Plaintiff provides no other arguments as to the first three factors of the CPA analysis, and the Court will not fill in the blanks for Plaintiff. Therefore, Plaintiff has also failed to meet his burden as to the CPA claim and the Court DENIES the motion.

As to Defendant's motion for summary judgment as to the CPA claim, it relies again on the assertion that Plaintiff cannot establish that the debt is invalid. *See* Dkt. No. 20 at 3. For the same reasons stated above in Section III.B.2.a.(1), the Court rejects Defendant's arguments. Therefore, Defendant's motion as to the CPA claim is DENIED.

**E. Outrage (Count 5)**

Defendant moves for summary judgment on Plaintiff's fifth claim of outrage. Dkt. No. 20 at 5–6. A claim for outrage requires the plaintiff to prove: "(1) extreme and outrageous conduct,

(2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 149 Wn.2d 192, 196, 66 P.3d 630 (2003). The conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Estate of Lee ex rel. Lee v. City of Spokane*, 101 Wn. App. 158, 175, 2 P.3d 979 (2000) (citing *Grimsby v. Samson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975)). "The question of whether certain conduct is sufficiently outrageous is ordinarily for the jury." *Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989).

As the moving party, Defendant must "produce evidence negating an essential element of [Plaintiff's] claim . . . or show [Plaintiff] does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102. Defendant argues that reporting a debt that is valid does not satisfy the elements of outrage, and that Plaintiff has not proven the debt was invalid. Dkt. No. 20 at 6. While acknowledging that "[t]he question of whether certain conduct is sufficiently outrageous is ordinarily for the jury," Defendant argues that "it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability." *Id.* at 5 (citing *Dicomes*, 113 Wn.2d at 630). At least one court in this District has found outrage in a bench trial verdict based on a creditor's ongoing improper conduct. *See Lucero v. Cenlar FSB*, No. C13-602, 2016 WL 337221 (W.D. Wash. Jan. 28, 2016). And here, the Court found Defendant's conduct—*i.e.*, misrepresenting to Plaintiff that it had proof of the debt when it knew it did not and continuing to attempt to collect from Plaintiff and repeating the misrepresentation over the next two years, only abandoning its attempts upon an inquiry from the Department of Licensing—to be misleading and unfair, which indicates that reasonable minds could believe Defendant's conduct

was also outrageous. Therefore, Defendant's motion for summary judgment as to Count 5 is DENIED.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED:

(1) Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 17) as to Counts 1 and 2 is GRANTED, and DENIED as to Counts 3 and 4. The Court FINDS Defendant violated 15 U.S.C. § 1692e and 15 U.S.C. § 1692f.

(2) Defendant's Motion for Summary Judgment (Dkt. No. 20) is DENIED.

(3) The Parties SHALL file a joint status report stating whether they wish the settlement conference and/or mediation deadlines to be reset, any modification from the original estimate of number of trial days requested, and any dates for which they are unavailable for trial through December 2027. If the Parties have previously attempted private mediation and believe a settlement conference with a magistrate judge may be productive, they may include this request in the report. The report SHALL be filed **within fourteen (14) days** of this Order.

Dated this 10th day of August, 2026.

Tana Lin
United States District Judge